**Kimberly A. SUTHERLAND,
Plaintiff–Appellant,**

v.

**Paul R. O'MALLEY and O'Malley &
O'Malley, Ltd.,
Defendants–Appellees.**

No. 88–2221.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1989.

Decided Aug. 14, 1989.

Rehearing Denied Sept. 5, 1989.

---

**8.** The motion by the RLEA to sanction the Escanaba for filing a motion to show cause relating

to mootness is denied.

Ronald A. Bredemann, Flood, Bredemann & Evans, Park Ridge, Ill., Kimberly A. Sutherland, Chicago, Ill., for plaintiff-appellant.

Paul R. O'Malley, John A. O'Malley, Thomas D. Nissen, O'Malley & O'Malley, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, POSNER and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

This appeal arises out of a fee dispute between two attorneys, plaintiff Kimberly Sutherland and defendant Paul R. O'Malley.[1] Ms. Sutherland asked Mr. O'Malley to serve as co-counsel in the representation of one of her clients, Kerwin Albright. After a settlement was obtained in the Albright case, Mr. O'Malley caused the settle-

---

1. Mr. O'Malley is one of the managing attorneys in the defendant law firm of O'Malley & O'Malley, Ltd.

ment payments to be sent to him and deposited the payments in his firm's client fund account. In an effort to recover the funds, Ms. Sutherland filed this action in federal district court. Ms. Sutherland's pleadings alleged that, by diverting the settlement funds to his own firm, Mr. O'Malley violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. Her pleadings also alleged state common-law claims for conversion, fraud, and interference with business relationships. On July 11, 1985, the district court granted summary judgment in favor of the defendants on the conversion count, and, on September 21, 1987, the district court granted summary judgment on the RICO claim. The remaining pendent common-law claims were then dismissed. Ms. Sutherland's motions to reconsider the orders granting summary judgment to the defendants were denied, and she now appeals. We affirm the judgment of the district court.

## I.

### Facts

In March 1977, Ms. Sutherland entered into a contingency fee contract with Kerwin Albright in which she agreed to represent Mr. Albright in a personal injury action. The contract entitled her to attorney's fees in the amount of 40% of any recovery plus expenses. The action was filed in Illinois state court in May 1977, naming Norbran Leasing Co., Ford Motor Co., and Al Piemonte Ford, Inc. as defendants.

In March 1978, Ms. Sutherland asked Mr. O'Malley to associate himself with her as co-counsel in the Albright case. Mr. O'Malley agreed, and, in a letter to Ms. Sutherland dated April 7, 1978, stated that "[o]ur arrangement to split fees on a fifty-fifty basis or other equitable arrangement based on the degree of effort is satisfactory with me." R.24, Ex. A. Although Ms. Sutherland had filed the complaint in the Albright case and apparently participated in one deposition and a few brief court hearings and meetings, Mr. O'Malley maintains that he did the bulk of the work preparing for,

and trying, Mr. Albright's case. The trial ended in a jury verdict for Mr. Albright. An appeal was taken.

The Albright case eventually settled. The settlement from all defendants totalled $127,000, resulting in attorney's fees under the contingent fee contract of $50,800. Ms. Sutherland maintains that Mr. O'Malley committed three acts of mail fraud in obtaining the settlement checks from the Albright defendants. She alleges that, in September 1982, Mr. O'Malley sent two of the defendants forged releases of her attorney's lien and instructed them to make their settlement checks payable to "Kerwin Albright and O'Malley & O'Malley, Ltd., his attorneys." Appellant's Br. at 3. In February 1983, the third defendant sent Mr. O'Malley a letter informing him that it understood that its settlement check should be made payable to Mr. Albright and the O'Malley firm. Ms. Sutherland maintains that Mr. O'Malley "omitted to correct this impression." *Id.* at 4. Ms. Sutherland also alleges that Mr. O'Malley sent this defendant a release, that he had signed, "in full satisfaction of claims for attorney's lien." *Id.* After obtaining the three settlement checks, Mr. O'Malley paid Mr. Albright his net share, paid $8,000 of his own outstanding expenses related to the Albright case, and deposited the balance, $50,800, in the O'Malley firm client fund account.

In March 1983, Mr. O'Malley informed Ms. Sutherland of the settlement and his distribution of the proceeds and advised her that "[a]ttorney's fees and your reimbursement of expenses have been retained in my Client Fund Account subject to further agreement between us." R. 1, Ex. I; R. 42, Ex. B. Mr. O'Malley also informed Ms. Sutherland that he was "certainly available to discuss further with [her] [his] position regarding division of attorney's fees." *Id.* He also stated that his "view has always been that the handling of this case was so time consuming to this office and a successful outcome so tenuous and unpredictable that any division of attorney's fees would have to be based upon fundamental fairness and equity." *Id.*

On March 16, 1983, Ms. Sutherland filed an action in Illinois state court against Mr. O'Malley alleging the conversion of her attorney's fees and expenses and seeking to recover 50% of the attorney's fees generated by the Albright case. The state court ordered Mr. O'Malley to retain $25,815.55 (50% of the total attorney's fees plus Ms. Sutherland's claimed expenses of $415.55) in the O'Malley firm client fund account pending the outcome of the state action. Mr. O'Malley has stated that the funds remain in the client fund account at this time.

On January 10, 1985, Ms. Sutherland filed this federal action. She now seeks recovery of the entire $50,800. After instituting the federal suit, Ms. Sutherland requested that the defendants in this action be voluntarily dismissed from the suit pending in state court.

The district court initially granted Mr. O'Malley partial summary judgment on the conversion claim.[2] Later, it granted summary judgment on the RICO claim and dismissed the remaining pendent claims. Ms. Sutherland asks us to review the district court's determination with respect to both the conversion claim and the RICO claim.

2. The record before us is ambiguous as to why the district court chose to address this pendent state-law claim of conversion before addressing the federal claim. Since the issue is unnecessary to our decision today and neither party has raised it, we need not inquire further in any definitive way. However, we do note that, while "the doctrine of pendent jurisdiction ... is a doctrine of flexibility, designed to allow courts to deal with cases ... in the manner that most sensibly accommodates a range of concerns and values," *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988), a key concern is, as Judge Posner pointed out in *Graf v. Elgin, Joliet and Eastern Railway Co.,* 790 F.2d 1341, 1346 (7th Cir.1986), the prerogative of "a state's own courts ... to decide issues of state law arising in suits between citizens of that state." This admonition is consistent with the Supreme Court's injunction in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." 383 U.S. at 726, 86 S.Ct. at 1139

## II.

### Analysis

#### A. *Conversion*

Ms. Sutherland alleges that Mr. O'Malley committed the tort of conversion by withholding from her the $50,800 fund of attorney's fees generated by the Albright settlement. She maintains that the proceeds of the settlement were entirely the property of Mr. Albright, subject to valid liens. She further contends that she has a property right in the fund of attorney's fees based on her contingent fee contract with Mr. Albright and her resulting statutory attorney's lien.[3] Ms. Sutherland notes that, Mr. O'Malley, by contrast, does not have any lien on the fund of attorney's fees.

The district court granted summary judgment to the defendants on the conversion claim because it concluded that, because of Mr. O'Malley's independent right to a part of the fees, Ms. Sutherland could "claim only an indeterminate sum" of money and could not establish " 'that the money claimed ... at all times belonged to [her] and that [Mr. O'Malley] converted it to his own use.' " *Sutherland v. O'Malley,* 687 F.Supp. 392, 394 (N.D.Ill.1988) (quoting *In re Thebus,* 108 Ill.2d 255, 91

(footnote omitted). Certainly, the district court ought to be particularly circumspect about ruling on matters of state law when "it appears that the federal claim is subject to dismissal." *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 196 (3d Cir.1976). As Judge Posner noted in *Graf,* there can be countervailing interests of judicial economy and perhaps, to the eye of the district court ruling in 1985, when the law on RICO was at an earlier period in its gestation, it might have appeared prudent to pare down the allegations that appeared meritless in order to establish a better focus on the case with respect to the remaining issues.

3. *See* Ill.Ann.Stat. ch. 13, para. 14:

§ 1. Attorneys at law shall have a lien upon all claims, demands and causes of action ... upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such attorneys rendered or to be rendered for their clients on account of such suits, claims, demands or causes of action....

Ill.Dec. 623, 626, 483 N.E.2d 1258, 1261 (1985)). Thus, under Illinois law, Ms. Sutherland's conversion claim could not succeed.

Ms. Sutherland maintains that the district court erred because she, by virtue of her attorney's lien growing out of her express fee contract with Mr. Albright, was the only person with a right to immediate possession of the fund of attorney's fees generated by the settlement of the Albright case. Because Mr. O'Malley had no fee contract with Mr. Albright, and, thus no attorney's lien on the fund, he only had a right to recover a portion of the fees *from Ms. Sutherland* under their co-counsel agreement. Ms. Sutherland maintains that she has an immediate right to possession of the attorney's fees and has a claim for a precise sum of money—the *entire* fund of attorney's fees. She concludes that Mr. O'Malley's right to any funds, which arises merely under his co-counsel agreement with Ms. Sutherland, is not at issue in this case.

■ The district court properly granted summary judgment to the defendants on Ms. Sutherland's conversion claim. In order to assert successfully a claim for conversion, a plaintiff must prove four elements:

(1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the personalty of another; (2) his right in the property; (3) his right to the immediate possession of the property, absolute and unconditional; and (4) a demand for possession thereof.

*Mid–America Fire & Marine Ins. Co. v. Middleton,* 127 Ill.App.3d 887, 82 Ill.Dec. 555, 558, 468 N.E.2d 1335, 1338 (1984); *see also Eggert v. Weisz,* 839 F.2d 1261, 1264 (7th Cir.1988); *In re Thebus,* 108 Ill.2d 255, 91 Ill.Dec. 623, 625, 483 N.E.2d 1258, 1260 (1985) (" 'One claiming conversion must show a tortious conversion of the chattel, a right to property in it, and a right to imme-diate possession which is absolute....' ") (quoting *Jensen v. Chicago & Western Indiana R.R.,* 94 Ill.App.3d 915, 50 Ill.Dec. 470, 485, 419 N.E.2d 578, 593 (1981)). In addition, as we explained in *Eggert,* 839 F.2d at 1264, Illinois law limits the circumstances in which a plaintiff may maintain an action for the conversion of money. "[T]he general rule is that conversion will not lie for money represented by a general debt or obligation." *Thebus,* 91 Ill.Dec. at 258, 483 N.E.2d at 1261. In order for money to be the proper subject of a conversion action, it must be capable of being described as a "specific chattel." *Id.* 91 Ill.Dec. at 625, 483 N.E.2d at 1260; *see also Eggert,* 839 F.2d at 1264. In order to satisfy this requirement, the plaintiff must have a "right to a specific fund or specific money in coin or bills." *Middleton,* 82 Ill.Dec. at 559, 468 N.E.2d at 1339. Where the plaintiff's right is merely to "an indeterminate sum" of money, a conversion action cannot successfully be maintained. *Id.; see also Eggert,* 839 F.2d at 1265. Instead, a defendant wrongfully depriving a plaintiff of an indeterminate sum of money is liable for a debt rather than a conversion. *See Eggert,* 839 F.2d at 1265.[4]

■ Because Ms. Sutherland has a claim only for an indeterminate portion of the attorney's fees generated by the Albright settlement, the district court properly rejected her conversion claim. Ms. Sutherland's criticism of the district court's decision is erroneous because she incorrectly assumes that an attorney only obtains a right to compensation from a client when the attorney has an express fee contract with the client giving rise to an attorney's lien. An attorney, however, is entitled to be compensated for services rendered to a client pursuant to an express contract (if one exists between the parties) *or* under a quantum meruit theory. *See de Korwin v. First Nat'l Bank of Chicago,* 155 F.Supp. 302, 306, 307 (N.D.Ill.1957); *People's Casu-*

---

4. *See also Mijatovich v. Columbia Sav. & Loan Ass'n,* 168 Ill.App.3d 313, 119 Ill.Dec. 66, 69, 522 N.E.2d 728, 731 (1988) ("The complaint also fails to allege conversion, which requires more than mere obligation to pay money. The funds defendant held represented only a general debt of the debtor to the creditor.") (citation omitted); *Middleton,* 82 Ill.Dec. at 559, 468 N.E.2d at 1339 ("If plaintiff determined to bring a common law action, the proper one would be assumpsit for money had and received.").

*alty Claim Adjustment Co. v. Darrow,* 172 Ill. 62, 49 N.E. 1005, 1006 (1898) (where attorney and client had no express contract regarding fee, attorney "was entitled to recover in a quantum meruit"); *In re Bort's Estate,* 75 Ill.App.2d 322, 221 N.E.2d 24, 27 (1966); *Sullivan v. Fawver,* 58 Ill.App.2d 37, 206 N.E.2d 492, 494 (1965); *Mecartney v. Wallace,* 214 Ill.App. 618, 622 (1919).[5] Because Mr. O'Malley performed substantial services on the Albright case, he is entitled to recover attorney's fees even though he did not have an express contract with Mr. Albright. Thus, Ms. Sutherland is not entitled to the entire $50,-800 fund. While she may be entitled to a portion of the fees generated in the Albright case, and apparently could have instituted a breach of contract action against Mr. O'Malley in an attempt to resolve their dispute under their co-counsel agreement and fee arrangement, she is unable to make a claim for a "specific identifiable fund capable of being the subject of a conversion." *Thebus,* 91 Ill.Dec. at 258,

483 N.E.2d at 1261. Thus, we conclude that the district court properly granted summary judgment to the defendants on the conversion count.

## B. *RICO*

Ms. Sutherland maintains that, by diverting the settlement checks away from her and then withholding the fund of attorney's fees from her, Mr. O'Malley has committed a RICO violation. On appeal, Ms. Sutherland argues that extortion and multiple acts of mail fraud allegedly committed by Mr. O'Malley constitute a pattern of racketeering activity for the purposes of the RICO statute.[6] The district court granted summary judgment to the defendants on the RICO claim because it concluded that Ms. Sutherland's allegations did not satisfy RICO's pattern requirement. The district court first explained that Ms. Sutherland could not establish successfully the predicate act of extortion under the facts of this case, because there was no evidence that

---

**5.** *See* Illinois Law and Practice, Attorneys and Counselors § 136 (1971):

> Where an attorney performs services at the request of another attorney without any agreement as to the amount of the fee and it is to be contingent on a result which follows, *he is entitled to receive a reasonable fee* ....
>
> Each of two attorneys who are severally employed in a case is entitled to recover for the services rendered by him in accordance with whatever agreement may have been made with the clients and, *in the absence of any such agreement, each is entitled to recover for the reasonable value of his own services* ....

*Id.* at p. 241 (emphasis supplied) (footnotes omitted); *see also id.* § 134:

> On the retainer of an attorney without an express agreement as to compensation, the law implies an agreement by the client to pay for the services of the attorney.
>
> ....
>
> ... An attorney who renders professional services under a contract of employment, express or implied, without any agreement as to a fixed amount of compensation, is entitled to receive what his services are reasonably worth.

*Id.* at pp. 235–36 (footnotes omitted); *cf. Rhoades v. Norfolk & W. Ry.,* 78 Ill.2d 217, 35 Ill.Dec. 680, 685–86, 399 N.E.2d 969, 974–75 (1979) (where law firm that had been discharged by client could not perfect attorney's lien because necessary underlying attorney-client relationship did not exist when firm at-

tempted to perfect its lien, firm was still entitled to be paid "on a *quantum meruit* basis a reasonable fee for services rendered before discharge"); *LaRocco v. Bakwin,* 108 Ill.App.3d 723, 64 Ill.Dec. 286, 290, 439 N.E.2d 537, 541 (1982) ("In Illinois, recovery under a *quantum meruit* theory arising from services rendered by an attorney is for the reasonable worth or value of his services as shown by the evidence.").

**6.** Each of the activities made unlawful by 18 U.S.C. § 1962 includes, as a necessary element of the offense, proof either of "a pattern of racketeering activity" or of the "collection of an unlawful debt." "Racketeering activity," as defined by the statute, includes both mail fraud and extortion. *See* 18 U.S.C. § 1961(1). A "pattern of racketeering activity," as defined by the statute, "requires at least two acts of racketeering activity, one of which occurred after [October 15, 1970] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5); *see also H.J. Inc. v. Northwestern Bell Tel. Co.,* — U.S. ——, ——, 109 S.Ct. 2893, 2895–97, 2899, 106 L.Ed.2d 195 (1989) (the statute "does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern"); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985) ("while two acts are necessary, they may not be sufficient"); *Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271, 1275–76 (7th Cir.1989).

Mr. O'Malley either intended to put her in fear or that her fear was reasonable. *See* 687 F.Supp. at 396. While the district court apparently believed that Ms. Sutherland had made adequate allegations of (at most) three acts of mail fraud, the court concluded that those acts did not amount to a pattern of racketeering activity. The court's conclusion was based on the "undisputed" facts that Mr. O'Malley allegedly made only a single decision to defraud and that the harms suffered by Ms. Sutherland were cumulative rather than independent. Thus, the district court characterized the three alleged acts of mail fraud as "only distinct subschemes, not distinct schemes" that would satisfy the pattern requirement of RICO. *See* 687 F.Supp. at 396–97. Because Mr. O'Malley's alleged wrongdoing does not constitute a pattern of racketeering activity, the district court properly granted summary judgment to the defendants on this claim.

### 1.

We first note that Mr. O'Malley's alleged extortion (or attempted extortion as Ms. Sutherland prefers to characterize the activity in her brief) cannot be counted as a predicate act for the purposes of the RICO statute. The district court correctly concluded that no facts have been alleged that are sufficient to support an extortion charge. The federal criminal code defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The district court explained that, in this case, "there is no evidence that O'Malley either intended to put her in fear or that her fear was reasonable." *See* 687 F.Supp. at 396 (citing *United States v. Capo*, 817 F.2d 947, 951 (2d Cir.1987) (en banc) (in order to prove extortion by fear of economic loss, "the proof need establish that the victim *reasonably* believed: first, that the defendant had the power to harm the victim, and second, that the defendant would exploit that power to the victim's detriment")). We agree. In support of her allegation of

extortion, Ms. Sutherland contends that Mr. O'Malley told her that he would hold onto all the attorney's fees and Ms. Sutherland's expenses until she agreed to allow him to keep 80% of the fees. *See* Appellant's Br. at 23. She maintains that this "threat" was made in Mr. O'Malley's deposition and in two letters that he sent to her.

The deposition testimony that Ms. Sutherland relies upon hardly constitutes a threat by Mr. O'Malley that could have caused Ms. Sutherland *reasonably* to fear that Mr. O'Malley intended to inflict economic harm upon her. *See United States v. Nedza*, 880 F.2d 896 at 962 (7th Cir.1989) (" '[A] threat is not a state of mind in the threatener; it is an appearance to the victim,' *so long as the victim's conclusion is reasonable.*") (quoting *United States v. Holzer*, 816 F.2d 304, 310 (7th Cir.), *vacated and remanded on other grounds*, —— U.S. ——, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987)) (emphasis supplied); *United States v. Lisinski*, 728 F.2d 887, 891 (7th Cir.) (in determining whether defendant has made "wrongful use of ... fear" under the Hobbs Act, court must look to the " 'circumstances surrounding the alleged extortionate conduct that rendered the victim's fear of threatened loss *reasonable*' ") (quoting *United States v. Sander*, 615 F.2d 215, 218 (5th Cir.), *cert. denied*, 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980)), *cert. denied*, 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984) (emphasis supplied). At the deposition, Ms. Sutherland asked Mr. O'Malley, "Did you ever make any offers to me as far as settling the attorneys' fees in the case of Albright v. Levy?" Mr. O'Malley merely replied, "Yes, I believe I suggested to you that we settle the attorneys' fees matter on an 80–20 percent split...." R. 27, Ex. A.

The letters cited by Ms. Sutherland are similarly innocuous. In his letter of March 2, 1983, Mr. O'Malley informed Ms. Sutherland that he had accepted receipt of the settlement funds, disbursed the net proceeds to Mr. Albright, and retained the attorney's fees in his client fund account "subject to further agreement between" himself and Ms. Sutherland. His letter goes on to suggest negotiation over divi-

sion of the fee: "I am certainly available to discuss further with you my position regarding division of attorney's fees. My view has always been that the handling of this case was so time consuming to this office and a successful outcome so tenuous and unpredictable that any division of attorney's fees would have to be based on fairness and equity." R. 1, Ex. I; R. 42, Ex. B. Mr. O'Malley's letter of March 17, 1983 expressed his disappointment upon learning that Ms. Sutherland had filed suit against him in state court. He went on to explain, "I have repeatedly invited you to discuss the resolution of this matter amicably. I have advised you that the portion of attorney's fees that you dispute has been maintained in my Client Fund Account since the funds were initially received. These funds will remain there until we either agree on the disbursement of these funds or the court orders distribution." R. 1, Ex. J; R. 42, Ex. C. These "threats" could not have given rise to any reasonable fear in Ms. Sutherland sufficient to satisfy the extortion statute.

### 2.

We next turn to Ms. Sutherland's mail fraud allegations. Even if we assume that Ms. Sutherland has properly alleged multiple acts of mail fraud,[7] we conclude that the acts alleged do not constitute a "pattern of racketeering activity" for purposes of RICO. The Supreme Court has recently explained that Congress intended to "take a flexible approach" to RICO's pattern requirement. Congress' approach to the RICO pattern requirement "envision[ed] a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, — U.S. —, —, 109 S.Ct. 2893, 2895–97, 2900, 106 L.Ed.2d 195 (1989). Therefore, the Supreme Court rejected interpretations of the pattern requirement that would limit estab-

lishment of a pattern of racketeering activity to those circumstances in which multiple schemes can be proven or where the defendant's racketeering activities are "characteristic either of organized crime in the traditional sense, or of an organized-crime-type perpetrator." — U.S. at —, 109 S.Ct. at 2903.

Within this flexible framework, two separate elements are to guide our analysis—relationship and continuity. *See id.* — U.S. at —, 109 S.Ct. at 2900 (" 'It is this factor of *continuity plus relationship* which combines to produce a pattern.' ") (quoting S.Rep. No. 91–617, p. 158 (1969)) (emphasis supplied); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986) (predicate acts "must demonstrate both a continuity and a relationship in order to constitute a pattern of racketeering activity"). Thus, in order to establish a pattern of racketeering activity, a plaintiff must show "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.*, — U.S. at —, 109 S.Ct. at 2900. Application of these concepts of relationship and continuity requires great caution, because "in practice their proof will often overlap." *Id.* Moreover, while the factors weighed in each inquiry are similar, they are evaluated from a different perspective. As we noted in *Morgan:*

> Requiring both continuity and relationship among the predicate acts for the pattern requirement to be met is a sound theoretical concept that is not easily accomplished in practice. This is because the terms "continuity" and "relationship" are somewhat at odds with one another. Relationship implies that the predicate acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct. Continuity, on the other hand, would embrace predicate acts occurring at different points in time or

---

**7.** *See* Appellees' Br. at 16–17. Mr. O'Malley argues that Ms. Sutherland has failed to allege properly mail fraud since none of the alleged

misrepresentations were made to Ms. Sutherland, induced her to act, or were relied upon by her.

involving different victims. To focus excessively on either continuity or relationship alone effectively negates the remaining prong.

804 F.2d at 975, *quoted in Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1276–77 (7th Cir.1989).

Ms. Sutherland appears to satisfy the relationship element of the pattern requirement in this case. As noted above, "[r]elationship implies that the predicate acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct." *Morgan*, 804 F.2d at 975; *see also H.J. Inc.*, — U.S. at —, —, 109 S.Ct. at 2899–01, 2906 (relationship element satisfied where predicate acts "are said to be related by a common purpose"). The alleged predicate acts of mail fraud relied upon by Ms. Sutherland in this case, Mr. O'Malley's use of the mails to send forged releases of attorney's liens to two defendants and his failure to correct the impression of a third defendant that all attorney's liens had been released, seem clearly to satisfy the relationship element. The acts all involved the same type of misconduct and occurred within a relatively short period of time (five months), and they were each related by a common purpose—procurement of the settlement checks from the defendants for deposit into the O'Malley client fund account.

■■■ Ms. Sutherland cannot, however, establish that these predicate acts have the continuity required to constitute a pattern of racketeering activity. To satisfy the continuity element, the plaintiff must show that the alleged predicate acts "themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc.*, — U.S. at —, 109 S.Ct. at 2900. The plaintiff must prove "continuity of racketeering activity, or its threat, *simpliciter*." *Id.* — U.S. at —, 109 S.Ct. at 2901. The Court has not formulated any general test for continuity in the abstract. Instead, the specific facts of each case must be examined to determine whether the predicate acts relied upon by the plaintiff establish a threat of continu-

ing racketeering activity. *Id.* Courts must examine a number of relevant factors when determining whether the predicate acts alleged are sufficiently continuous to constitute a pattern; these factors include "'the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries.'" *Arnett, supra*, 875 F.2d at 1277 (quoting *Morgan*, 804 F.2d at 975); *see also, e.g., Brandt v. Schal Assocs., Inc.*, 854 F.2d 948, 952 (7th Cir. 1988) ("The quest for 'continuity plus relationship' necessarily involves a fact-specific analysis."); *Jones v. Lampe*, 845 F.2d 755, 757 (7th Cir.1988). The Supreme Court in *H.J. Inc.* also explained, however, that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement: Congress was concerned in RICO with long-term criminal conduct." — U.S. at —, 109 S.Ct. at 2902; *see also Jones*, 845 F.2d at 757 ("Our cases demonstrate an expansive reading of civil RICO, but only where a true 'pattern' of prohibited activity, not just sporadic or isolated instances of fraud, are shown."); *Medical Emergency Serv. Assocs. v. Foulke*, 844 F.2d 391, 398 (7th Cir.1988) (continuity requirement not satisfied where case "involves the type of 'isolated event' that fails to manifest the threat of *continuing illegal activity* indicative of a 'pattern' of racketeering activity").

In light of these standards, we conclude that Mr. O'Malley's allegedly wrongful conduct does not satisfy the pattern requirement's continuity element. While a RICO pattern can be established, in some circumstances, by proof of a single scheme, it is not irrelevant, in analyzing the continuity requirement, that there is only one scheme. *See H.J. Inc.*, — U.S. at — – —, 109 S.Ct. at 2901 ("proof that a RICO defendant has been involved in multiple criminal schemes would certainly be highly relevant to the inquiry into the continuity of the defendant's racketeering activity"). Here, there is only one dishonest undertaking alleged, Mr. O'Malley's attempt to divert the settlement proceeds away from Ms.

Sutherland. This undertaking was accomplished, allegedly, in a single five-month period. In addition, there is only one victim, Ms. Sutherland. Moreover, Ms. Sutherland has suffered, allegedly, only one distinct economic injury—deprivation of the immediate possession of her share of the settlement funds. Most importantly, this case presents no threat of continuing illegal activity by Mr. O'Malley in the future. Rather, Mr. O'Malley's allegedly wrongful conduct, evaluated as a whole, shows that Mr. O'Malley is an "isolated offender" engaged in a "one-shot" effort to inflict a single injury. *See Jones*, 845 F.2d at 759; *see also Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (RICO " 'not aimed at the isolated offender' ") (quoting 116 Cong.Rec. 35193 (1970) (statement of Rep. Poff)); *Brandt*, 854 F.2d at 952 (allegations of "multiple acts in furtherance of a single episode of fraud by [defendant]

against a single victim ... cannot constitute a RICO pattern"); *Foulke*, 844 F.2d at 398 (no pattern shown where numerous predicate acts of mail fraud each related "to but a single episode of alleged wrongdoing" and resulted in a single injury.) [8] Because the predicate acts relied upon by Ms. Sutherland in this case do not amount to, or constitute a threat of, continuing racketeering activity, the district court correctly concluded that RICO's pattern requirement had not been satisfied in this case.[9]

### Conclusion

The judgment of the district court is affirmed. Because she has only a claim for an indeterminate sum of money, Ms. Sutherland cannot successfully maintain an action for conversion under Illinois law. In addition, Mr. O'Malley's allegedly wrongful

---

8. As we explained in *Morgan*, the mere fact that three separate mailings are involved in this case does not mean that a pattern of racketeering has been established. "All of these predicate acts still relate to but a single act:" the diversion of the settlement proceeds away from Ms. Sutherland. *See Morgan*, 804 F.2d at 976–77 (discussing *Lipin Enters. v. Lee*, 803 F.2d 322 (7th Cir. 1986)) ("Since these predicate acts were all made in a fairly short period of time (several months), and all clearly relate to the same transaction (the acquisition of a large block of stock), involve a single scheme and a single victim, and create a single injury, the acts in *Lipin* do not satisfy the continuity aspect of the pattern of racketeering activity."); *see also Arnett, supra*, 875 F.2d at 15 ("the raw number of predicate acts has never been determinative [in establishing a RICO pattern], especially when only mail and wire fraud are alleged"). As Judge Cudahy noted in *Lipin*:

> Mail fraud and wire fraud are perhaps unique among the various sorts of "racketeering activity" possible under RICO in that the existence of a multiplicity of predicate acts ... may be no indication of the requisite continuity of the underlying fraudulent activity. Thus, a multiplicity of mailings does not necessarily translate into a "pattern" of racketeering activity.

*Lipin*, 803 F.2d at 325 (Cudahy, J., concurring), *quoted in Arnett, supra*, 875 F.2d at 15, 1278–79.

9. Ms. Sutherland also asserts, in conclusory fashion, that Mr. O'Malley pursued a distinct scheme to defraud her client, Mr. Albright. *See* Appellant's Br. at 21. This "scheme," however, appears to involve common-law fraud, not the predicate acts of mail fraud or extortion that

Ms. Sutherland has contended on appeal constitute a pattern of racketeering activity. *See id.* at 1, 17. The district court concluded that, even if common-law fraud is a racketeering activity within the meaning of 18 U.S.C. § 1961(1), Ms. Sutherland could not establish a fraud claim under Illinois law in this case. *See* 687 F.Supp. at 395.

Under Illinois law, a plaintiff alleging fraud must prove, *inter alia*, that the victim of the alleged fraud relied on a false statement of material fact and suffered damage as a result. *See Michaels v. Michaels*, 767 F.2d 1185, 1205–06 n. 8 (7th Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986). Ms. Sutherland asserts that four or five years before settlement, and then again at the time he obtained the settlement checks, Mr. O'Malley falsely told Mr. Albright that Ms. Sutherland was "out of the case." Appellant's Br. at 21. Ms. Sutherland has not, however, presented any evidence showing how Mr. Albright was damaged by the first statement, and, with regard to the statement made at the time of settlement, she merely asserts, again in conclusory fashion, that, "[a]s a result of O'Malley's fraud, Albright is legally liable to Sutherland for the attorney's fees." *Id.* She has not, however, presented us with any reasoned elaboration, including citation to authority, supporting her contention that Mr. Albright was damaged by Mr. O'Malley's conduct. Therefore, Ms. Sutherland has not met her responsibility under Rule 28(a)(4) of the Federal Rules of Appellate Procedure, and the issue is not properly before us on appeal. *See Zelazny v. Lyng*, 853 F.2d 540, 542 n. 1 (7th Cir.1988); *Beard v. Whitley County REMC*, 840 F.2d 405, 408–09 (7th Cir.1988).

conduct does not constitute a pattern of racketeering activity for purposes of the RICO statute. Thus, summary judgment in favor of the defendants on both counts was proper.

AFFIRMED.