The **COMMITTEE TO DEFEND the UNITED STATES CONSTITUTION,**
Plaintiff,

v.

**Sun Myung MOON; Bo Hi Pak; Unification Church International, Inc.; One Up Enterprises, Inc.; News World Communications, Inc.; Washington Times, Inc.; Causa USA; Schwalb, Donnenfeld, Bray & Silbert, P.C.; Philip D. Green; James Gavin; Debra Sullivan; Bernice Cowin; and Warren S. Richardson, Defendants.**

Civ. A. No. 90–2291.

United States District Court,
District of Columbia.

Oct. 30, 1991.

Heideman Cardin, P.C. by Richard D. Heideman, Washington, D.C., HUB Law Offices by Ford Greene, San Anselmo, Cal., for plaintiff.

Covington & Burling by Charles F.C. Ruff, Mark H. Lynch, Ethan Posner, Washington, D.C., for defendant Bo Hi Pak.

Steptoe & Johnson by Antonia B. Ianniello, Washington, D.C., for defendant Schwalb, et al.

Mayer, Brown & Platt by Michael R. Bromwich, Washington, D.C., for defendant Grant Thorton.

Warren S. Richardson, pro se.

### MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This case comes before the Court on defendants' motion to dismiss for failure to state a cause of action upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Because plaintiff, The Committee to Defend the United States Constitution ("Committee") has failed to state any cognizable federal claim, the motion is granted with respect to all defendants.[1]

*Background:*

On October 4, 1991, the Court conducted a hearing based upon the defendant's motion to dismiss for failure to state a claim upon which relief may be granted. Fed. R.Civ.P. 12(b)(6). In ruling on such a motion, the Court must construe the complaint in the light most favorable to the plaintiff. *McGowan v. Warnecke,* 739 F.Supp. 662 (D.D.C.1990).

Plaintiff Committee brings this civil action under the Racketeering Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. §§ 1962, 1964. Plaintiff's complaint alleges a series of acts by an enterprise known as the "Moon Organization." That enterprise is alleged to be a strict, hierarchical organization which includes the defendants in this case.

Plaintiff alleges that the enterprise took actions with the objective of establishing "a centralized system of global financial control as part of, in Moon's words, an 'automatic theocracy to rule the world;' that is, the establishment of a worldwide government in which the separation of church and state would be exterminated and subject to the direct governance of Sun Myung Moon." Complaint at ¶ 101(a).[2] As part of that overall scheme the Committee alleges that defendants created and used the Committee to Defend the United States Constitution as a "front." It claims that despite its stated goal of educating the public, the Committee's real purpose was nothing more than "to obtain the greatest possible legitimacy, power and political influence to support defendant Moon's objectives, including obtaining executive clemency [for criminal conduct of which he had been convicted.]" Complaint at ¶ 101. Plaintiff Committee alleges that in connection with this scheme, the following events occurred.

---

1. Because of the finding that no cognizable federal claim exists, the Court refuses to exercise jurisdiction over the plaintiff's pendent state law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

2. In an effort to permit plaintiff every opportunity to state a cognizable federal claim, the Court has allowed the Committee to amend its original complaint. The result continues to be a 94 page rambling complaint.

On July 10, 1985 a meeting was held at the offices of defendant Schwalb, Donnenfeld, Bray & Silbert P.C. ("Schwalb firm") at which time the Committee was incorporated. Present at that meeting were David Finzer and Warren Richardson, who were named to the initial board of directors of the Committee. Richardson is a defendant in the present action, and Finzer is still a director on plaintiff Committee's board. Also present were defendant Philip Green, a partner in the Schwalb firm, defendant James Gavin, the director of public relations for the defendant Washington Times, and Gary Jarmin, who resigned from the Committee's board of directors during that initial meeting.

From the outset, plaintiff claims, the Committee's sole purpose was to serve as a "private public relations firm" to aid in Reverend Moon's attempts to gain a Presidential pardon. Complaint at ¶ 29. Defendant Bo Hi Pak, a confidant of Moon, provided the start up money for the Committee. In fact, it was conceded by plaintiff at argument that the sole source of funding for the Committee throughout its existence has been defendant Pak, defendant Unification Church, and other affiliates of the Moon Organization. Transcript of Motion to Dismiss at 10, 55.

From the first meeting in July, 1985 until September 18, 1987, Finzer had no contact with the corporation on whose board he was serving. There is no allegation that any misrepresentations were made to Finzer during that period. None of the defendants told him that the Committee was defunct or that it was actually carrying out activities related to its stated educational goal. He simply fell out of touch. It was not until 26 months after its inception, and only because he was moving to another state, that Mr. Finzer checked on the activities of the Committee.

Director Finzer was surprised, plaintiff's allege, to find that the Committee had taken actions during those two years. During that time the Committee allegedly was "financed, dominated, controlled and operated" by the Moon Organization. Complaint at ¶ 49. The following events had allegedly occurred without Finzer's knowledge or approval. The Moon Organization, acting through defendant Pak and defendant Bernice Cowin, had set up bank accounts for the Committee over which the Moon Organization maintained control. The Moon Organization, through defendant Pak and the Schwalb firm, had prepared corporate minutes referring to conferences between the directors when no one had ever conferred with director Finzer. These minutes had allegedly cemented the Moon Organization's control over the Committee by naming various officers of the Committee who could run its day to day affairs as directed by the Moon Organization.

Most importantly, the plaintiff alleges that $400,000 of the funds donated to the Committee by the Moon Organization had been spent in a public relations campaign to secure a pardon for defendant Moon. The campaign consisted of full page advertisements in several national newspapers which ran in July and August of 1985 and depicted Moon's conviction as religious persecution. The exact cost of these advertisements is unknown. In addition, on February 7, 1986, defendant Cowin allegedly disbursed $179,783.18 in Committee funds to Editor's Press in consideration for the printing of a magazine which also supported a Presidential pardon for Moon.

After the payment for the magazine, in February, 1986, until Finzer's reappearance, in September, 1987, the Committee filed tax returns and financial statements with the District of Columbia government. It did not, however, continue to actively disburse funds to aid Moon in securing a pardon. In fact, it appears from the allegations that during that period the Committee's operations practically ceased.

After Finzer was informed of these actions by the Committee on September 18, 1987, he called a board meeting at which time defendant Richardson resigned from the board of directors. Finzer and two new directors thereafter retained counsel and the Committee instituted this action.

*Discussion:*

I start by noting that the alleged substantive conduct of the defendants is not

really at issue before the Court. The question I must first address is whether this Court has jurisdiction to consider plaintiff's claims. Plaintiff's sole basis of federal jurisdiction is the Racketeering Influenced and Corrupt Organizations Act ("RICO"). The Committee alleges the defendants have acted as racketeers, as defined in 18 U.S.C. § 1962. The Committee alleges that the defendants have committed 31 separate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343.

Defendants respond that plaintiff's RICO claims must fail on three bases. First, the plaintiff has not alleged sufficient acts to constitute a "pattern" of racketeering as defined in the RICO statute. Second, the relationship between the plaintiff and the "enterprise" as alleged is not encompassed within the statute. Third, the plaintiff has missed the four year statute of limitations applicable to civil RICO claims. I address these arguments in turn.

### A. The "Pattern":

█ A plaintiff does not allege a sufficient "pattern" of activity to state a RICO claim, unless that plaintiff pleads two or more predicate acts which are related and pose a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Company*, 492 U.S. 229, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). Considering these factors, I find that the Committee has not alleged a sufficient pattern of racketeering activity to sustain a RICO claim.

#### 1. Harm to Plaintiff's Business or Property

It might at first seem surprising that a 94 page complaint, consisting of 305 paragraphs and alleging 31 racketeering acts, should fail to state an adequate pattern under RICO. A brief look at the content of that complaint, however, reveals that even if all the Committee's allegations were true, almost none of them are proper predicates for a civil RICO claim.

Civil RICO, provides an action only to a person "injured in *his* business or property by reason" of a criminal RICO violation under § 1962. 18 U.S.C. § 1964 (emphasis added). In order to establish standing to bring a civil RICO claim, a plaintiff must show that it "was injured by reason of predicate acts which were directed at him, as opposed to others." *Burdick v. American Express*, 865 F.2d 527, 529 (2nd Cir. 1990). In *Burdick*, the court found that a former vice president of a brokerage firm had no standing to bring a RICO claim based upon the firm's breach of its fiduciary responsibility to its customers. In so doing, the court rejected the broker's claim that the firm's alleged acts of mail and wire fraud had diminished his customer list. Thus, in considering the Committee's allegations, I only consider those acts which have resulted in business or property harm to the Committee. Many of the Committee's allegations do not meet this simple requirement.

A majority of the Moon Organization's alleged racketeering acts have nothing whatsoever to do with the Committee. Racketeering Act One, for instance, concerns Reverend Moon's prior conviction for obstruction of justice which occurred before this corporate plaintiff was even in existence. It has nothing to do with the Committee. The Committee cannot now use that prior conviction to bootstrap its way into federal court on a RICO claim. If that were the case, any state civil action against a convicted felon would be transformed into a federal RICO suit.

Other so-called predicate acts in the complaint cover conduct effecting a group of "victims" ranging from the Internal Revenue Service to Barbara Walters to prospective ballet students of the Universal Ballet Company to the Washington State Liquor Control Board. These acts, even if true as alleged, have even less to do with the plaintiff than did the firm's acts in *Burdick*. The Committee has not suffered any injury to their business or property by reason of these acts as is required by the statute. *See* 18 U.S.C. § 1964(c). It is Barbara Walters, not the Committee to Defend the U.S. Constitution, who was injured if the Moon Organization repeatedly used her picture without permission. It is the Washington State Liquor Control Board or the Univer-

sal Ballet students who may have a cause of action based upon the Moon Organization's alleged misrepresentations to them—not the Committee. The Committee responds that it was harmed by these alleged acts because the acts were part of the Moon Organization's wide ranging plan for world domination. I agree with the *Burdick* court, however, that "this type of harm is simply too remotely related to the predicate acts of mail and [wire] fraud to support a claim under RICO." *Id.* at 529.

### 2. Continuity

The remaining acts lack the "threat of continuing racketeering activity" required by *H.J.* 109 S.Ct. at 2901. In determining whether the remaining allegations show sufficient continuity, I consider a variety of factors "including the number and variety of predicate acts, the length of time during which they were committed, the number of victims and the occurrence of distinct injuries." *Passini v. Falke–Gruppe,* 745 F.Supp. 991 (S.D.N.Y.1990).

In plaintiff's entire complaint, there is only one colorable claim of tangible damage to the Committee. That claim is plaintiff's "Racketeering Act No. 24," the allegation that the Moon Organization disbursed $179,783.18 on February 11, 1986, from the Committee's account to pay Editor's Press for the brochure advocating Moon's pardon.[3] *See* Complaint at ¶ 203. All the other predicate acts alleged by

plaintiff were acts preparatory to this one injury. They did not result in separate harm. For instance, one alleged predicate act is the writing of the Committee's corporate minutes. Another is the setting up of the Committee's bank account. In fact, two of the alleged predicates plead by plaintiff are the *depositing* of large sums of money into the Committee's bank account by the Moon Organization. These acts culminated in the single lump sum expenditure of $179,783.18 on February 11, 1986. Thereafter, the Committee's operations were scaled down substantially. The alleged predicates which came after February, 1991 were the filing of financial statements and tax returns with the District of Columbia government and the giving of legal opinions. These final acts, however, are both unrelated to the harm alleged and in any event, improper predicates for a RICO pattern.[4]

In evaluating whether a proper pattern has been alleged, then, I consider only the preparatory acts and the final, one-time disbursement of Committee funds to pay printing costs for the magazine. These acts led to only one injury, a single disbursement of Committee funds. Taken together, the preparation and the single injury lack the required continuity to form a RICO pattern.[5]

Although the existence of only a single scheme is not dispositive, *H.J.* teaches that "proof that a RICO defendant has been involved in multiple criminal schemes [is]

---

**3.** I note that it is highly questionable whether even these expenditures by the Moon Organization resulted in tangible loss to the Committee. The plaintiff admitted at argument that all the Committee's money came from the Moon Organization. Thus, the Committee started with nothing and ended with nothing.

**4.** Only the types of conduct listed in § 1961(1) are proper RICO predicates. Plaintiff alleges that these final acts constituted mail and wire fraud as defined by 18 U.S.C. §§ 1341, 1343. As a matter of law, however, these allegations are not mail or wire fraud and are therefore improper RICO predicates.

An act can only constitute mail or wire fraud if it results in money or property damage. *See McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In this case the final acts plead by the Committee occurred after and are unrelated to the actual injury alleged in

Racketeering Act No. 24. Therefore, they were not perpetrated in furtherance of any scheme to defraud the Committee out of money or property. The only alleged injury to property was already completed when these tax returns were filed. As a matter of law, then, these final acts were not acts of mail or wire fraud upon which the Committee may bring civil suit.

**5.** I note that the Committee has not plead the disbursement of funds to pay for the whole page advertisements as a separate racketeering act. Even if plaintiff had plead that expenditure, however, an adequate pattern would not be made out. Two acts are necessary but are not necessarily sufficient to comprise an adequate RICO pattern. *See H.J. supra* 109 S.Ct. at 2899. The remainder of the facts indicate that the required continuity would still be lacking.

certainly highly relevant to the inquiry into the continuity of the defendant's racketeering activity." 109 S.Ct. at 2901. Here, as in *H.J.* the predicate acts all relate to a single scheme. In *H.J.*, however, the Court found that multiple acts of bribery in the context of a single scheme to fix rates could state an adequate RICO pattern. That case is far different than the one facing this Court. *H.J.* involved a recurring wrong, continued tampering with an ongoing rate-setting process. The preparatory acts in the present case, however, are related to a single scheme to disburse funds one time.

Not only did they concern only one scheme, but the preparatory acts of the Moon Organization concerned a single instance of economic injury. *See Sutherland v. O'Malley,* 882 F.2d 1196 (7th Cir. 1989); *Pyramid Securities, Ltd. v. International Bank,* 726 F.Supp. 1377, 1383 *aff'd* at 924 F.2d 1114 (D.C.Cir.1991) (no continuity when plaintiff alleged "essentially similar predicate acts with one economic injury."). In *Sutherland* the court found that RICO's continuity requirement was not met by an attorney's repeated acts of mail fraud, over a five month period, to wrongfully divert settlement money that should have gone to the client. Like the lawyer in *Sutherland,* the Moon Organization allegedly performed a series of preparatory acts which culminated in a single wrongful diversion of funds. Like *Sutherland* also, the requisite continuity is absent. One cannot turn a state law claim for corporate waste into a RICO claim by merely counting up the number of times defendants pick up a telephone or adding the number of stamps they use. It is far more relevant to the inquiry that the defendants actions, however numerous they may be, result in a single instance of injury.

Finally, " 'acts extending over a few weeks or months' are not enough" to establish a continuity in the acts. *Pyramid Securities Ltd. v. IB Resolution, Inc.,* 924 F.2d 1114, 1117 (D.C.Cir.1991), *quoting H.J.,* 109 S.Ct. at 2902. The Moon Organization's alleged predicate acts began, at the earliest, when the Committee was formed on July 11, 1985, and ended when the funds were disbursed, on February 11, 1986, a period of seven months. Furthermore, in the case of the Schwalb firm, the total span from its first to its last alleged predicate was only two months.

In *Pyramid,* the court found that when a "closed-ended" period of a half year was involved, a court should be reluctant, absent other factors, to find that the requisite continuity existed. *Id.* at 1117–1118. Those factors of separate injuries, victims and schemes are absent here. Nor is it any answer for the Committee to claim that there might be further instances of fraud using the Committee in the future. There was little threat that the disbursement of Committee funds would recur. Indeed, all indications were that the Committee was scaling down its operations after the February 11, 1986 disbursement. Such guesswork is insufficient to establish a RICO pattern. The statute contains "a requirement of far more than a hypothetical possibility of further predicate acts." *Id.* at 1119. "Congress was concerned in RICO with long-term criminal conduct." *H.J.,* 109 S.Ct. at 2902. Because the Committee does not allege such conduct on the part of the Moon Organization, no RICO "pattern" or continuity has been stated.

B. Identity of the Plaintiff and the Enterprise

■ It is undisputed that "section 1962(c) was intended to govern only those instances in which an 'innocent' or 'passive' corporation is victimized by the RICO 'persons' and either drained of its own money or used as a passive tool to extract money from third parties." *Rose v. Bartle,* 871 F.2d 331, 358 (3rd Cir.1989) (citation omitted). Thus, the purpose of § 1962(c) was to prevent "the exploitation and appropriation of *legitimate* business by corrupt individuals." *Yellow Bus Lines, Inc. v. Local Union 639,* 883 F.2d 132, 139 (D.C.Cir.1989) (emphasis added). The Committee simply cannot qualify as such a legitimate or innocent business and therefore cannot avail itself of the civil RICO statute.

The Committee as alleged was conceived in sin. From its very beginning, from the act of its incorporation, it was nothing

more than a front for Moon's campaign for a Presidential pardon.[6] It never received funding from any source other than the Moon Organization. It never acted out of the control of the Moon Organization. It never conducted a single activity in furtherance of its "legitimate" goal—educating the public on the Constitution. Now that same Committee would have this court find it a victim, and allow it to recover from its creator by using civil RICO. Such a plaintiff, which was *never* legitimate or innocent, however, was not the intended beneficiary of the RICO statute.

Applying RICO to disputes between two wholly illegitimate enterprises would lead to results clearly not intended by Congress. "Congress was aware that organized crime operates by infiltration of legitimate enterprises through a pattern of racketeering activity." *Yellow Bus*, 883 F.2d at 139, *citing* the S.Rep. No. 617, 91st Cong., 1st Sess. 76–78 (1969). Congress intended to prevent such infiltration by allowing civil recovery by an innocent victim of such infiltration.[7]

What Congress did not intend was for federal courts to involve themselves in the division of funds between two illegitimate enterprises. That type of case, however, is unavoidable once the Committee's theory is accepted. The Committee, a corporation spun-off by the Moon Organization for alleged illegitimate purposes, cannot now sue its creator because the Committee carried out the very acts for which the Moon Organization created it. The Committee cannot recover for the success of the plot which hatched it—whose purpose it only existed to further. RICO was not intended to provide funds for an immaculate rebirth of an entity originally conceived in sin.

*Rose* certainly offers no support for such a suit. In that case the court found that a county Republican party could be sued under RICO by former county party officials. *See Rose*, 871 F.2d at 359. The court stated that the party could be both the enterprise and the innocent victim. Whatever its eventual use, however, one cannot claim the Republican party was created solely for the purpose of furthering political corruption. The Republican party is just the type of legitimate enterprise Congress intended to protect from infiltration. The Committee, however, is another matter. From the start, it is admitted that the Committee was nothing more than a front for the Moon Organization. Whether the individuals, such as Finzer, who were wronged by the Moon Organization have a valid RICO claim is not before me.

## C. Statute of Limitations

■ The statute of limitations argument advanced by defendants is actually dispositive of this entire action. In determining when the statute began running and whether it was ever tolled, however, the court has had to analyze the plaintiff's entire complaint. Since the statute of limitations issue entailed such complete analysis, the Court has also decided the substantive issues underlying the complaint. Now that the relevant alleged predicate acts have been determined, however, it is clear to the Court that the statute of limitations has run on all plaintiff's RICO claims.

A plaintiff has four years to bring a RICO action from the time when the action accrues. *See Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).

---

**6.** Plaintiff claims for the first time in its post argument memorandum that it was not created for illegitimate purposes but became illegitimate shortly after its creation. This claim contradicts the clear language of all three of plaintiff's amended complaints, *see* Second Amended Complaint at ¶ 29 ("Moon *created* the Committee" to act as his private publicity firm) (emphasis added), and plaintiff's statements at oral argument. *See* Tr. at 68.

**7.** Plaintiff correctly observes that in defining what constitutes a proper "enterprise" in a RICO

action, some courts have observed that an organization is not an improper enterprise simply because it is a "victim" as well. *See, e.g., Rose*, 871 F.2d at 359. That line of reasoning misses the point in the current case. The question facing this Court is not whether the Moon Organization is a proper "enterprise," but whether the Committee is a proper "victim" or plaintiff. As I point out, because the Committee as alleged was never anything more than an illegitimate component of the enterprise, it does not have a cause of action under RICO.

A claim accrues at the time the plaintiff knows or has reason to know of the injury which is the basis the action. *See Pocahontas Supreme Coal Co. v. Bethlehem Steel*, 828 F.2d 211, 220 (4th Cir.1987). The only injury of which the Committee complains occurred on February 11, 1986. This case was filed on September 14, 1990, over four years later. Thus, all the Committee's claims are barred by RICO's statute of limitations.

Plaintiff Committee, and even Finzer individually, knew or should have known of the expenditure of Committee funds. Finzer was a director at all times relevant to this case and owed a fiduciary duty to the Committee. In *Estate of Grant v. U.S. News & World Report, Inc.*, this court found that a director, absent affirmative acts of concealment, has a "general duty ... to keep himself at least minimally aware of corporate affairs." 639 F.Supp. 342, 349 (D.D.C.1986).

Finzer, therefore, had an obligation to remain reasonably informed of the Committee's operations. No acts of affirmative concealment by the other directors are alleged. In fact, the Committee admits that when, after two years, Finzer merely inquired as to the Committee's activities, it immediately divulged to him all the facts which form the basis of the plaintiff's complaint. In addition, the alleged misconduct in this case was the conducting of a high profile publicity campaign. Full-paged advertisements were run in major national newspapers over the Committee's name. A magazine was produced and distributed. If Finzer, a director, did not actually learn of these activities, it is certainly through no act of concealment on any defendant's part. A director cannot ignore his duties and fail to read the newspaper for two years and later claim that an applicable statute of limitations is tolled by his neglect.

D. Rule 11 Motion

■ Grant Thorton, the accountant for the Committee, has filed a motion for Rule 11 sanctions against the Committee, claiming that it was erroneously named as a defendant in the first complaints. Grant Thorton merely did normal accounting work for the Committee and was not even mentioned as part of the "enterprise" in the first complaint. Its actions seem beyond reproach.

Clearly, the plaintiff now agrees with that substantive position. The Committee has dropped Grant Thorton from its final complaint, in part because it was informed that Rule 11 sanctions might be assessed were a defendant improperly named. Although the Committee wrongly named Grant Thorton in its first complaints, I must assess its pleadings in total in deciding whether to grant Rule 11 sanctions. The Committee has acted responsibly in reassessing the merits of its claim against Grant Thorton. Therefore I decline to apply Rule 11 in this case.

For the above stated reasons, the motion to dismiss is granted with respect to all the defendants, and the motion for Rule 11 sanctions is denied.