**J.D. MARSHALL INTERNATIONAL, INC., an Illinois corporation, Plaintiff–Appellant,**

v.

**REDSTART, INC., an Illinois corporation, John Ewing and Satish Mathur; Inchcape, Inc., a Delaware corporation, and Inchcape PLC, a foreign corporation, Marshall International Trading Co., a Delaware corporation, Defendants–Appellees.**

**No. 90–1336.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1990.

Decided June 4, 1991.

Ralph A. Mantynband, Francesca J. Robertson, Arvey, Hodes, Costello & Burman, Chicago, Ill., Charles H. Williams, Orangeburg, S.C., Daryl L. Williams, Belton T. Zeigler, Boyd, Knowlton, Tate & Finlay Columbia, S.C., for plaintiff-appellant.

Jon K. Stromsta, Michael H. King, Ross & Hardies, Chicago, Ill., David R. Herzog Layfer, Cohen & Handelsman, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, WOOD, Jr., and RIPPLE, Circuit Judges.

BAUER, Chief Judge.

In this commercial litigation, we must grapple again with the meaning and interpretation of a "pattern of racketeering activity" pursuant to 18 U.S.C. §§ 1961–64, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiff-appellant J.D. Marshall International, Inc. ("Marshall") appeals the district court's denial of its motion to file a second amended complaint and the subsequent dismissal of its civil action against the defendants-appellees, Inchcape PLC, a foreign corporation; its wholly owned subsidiary Inchcape, Inc., a Delaware corporation; Inchcape, Inc.'s wholly owned subsidiaries, Marshall International Trading Company ("MITCO") and Redstart, Inc. ("Redstart"); and two former officers of Redstart, Inc., John Ewing and Satish Mathur (collectively "Defendants"). We find that the district court did not abuse its discretion by dismissing Marshall's action, and therefore, affirm its decision.

## I.

The chain of events that led to this litigation began when Marshall acquired various assets of Redstart's export management business on February 3, 1984, pursuant to an Agreement of Sale and Purchase ("Purchase Agreement") between Marshall and Redstart. The assets acquired by Marshall included certain accounts receivable and various other current assets, Redstart's agreements with suppliers and distributors, plant and equipment, and the right to use the name "J.D. Marshall International, Inc." (Prior to the sale, the corporate name under which Redstart operated its export business was "J.D. Marshall International, Inc." After the Purchase Agreement was executed, the corporation formerly known as J.D. Marshall, Inc. changed its name to Redstart, Inc.). In the Purchase Agreement, Redstart agreed "to cease conducting active business operations under the name 'J.D. Marshall'" as of the February 3, 1984, closing date. The considera-tion for the assets purchased by Marshall consisted of a combination of cash and the assumption by Marshall of several of Redstart's liabilities. The purchase price came to $2,378,636, of which $1,854,218 (or 78% of the total price) was "paid" by Marshall's contractual agreement to assume and satisfy in a timely fashion specific scheduled liabilities and contractual obligations of Redstart.

The present litigation originated as a cross-claim in a suit by Utica Tool Company ("Utica") against J.D. Marshall International, Inc. and Redstart, Inc. in the United States District Court for the District of South Carolina. In that action, Utica filed suit against both Marshall and Redstart for monies allegedly owed from a sale of merchandise to either Marshall or Redstart. Utica had been a supplier to Redstart prior to February 3, 1984, and became a supplier to Marshall at the time that Marshall acquired Redstart's business. Marshall denied owing Utica anything and filed a cross-claim against Redstart and two of its corporate officers, John Ewing and Satish Mathur. The district court in South Carolina severed the cross-claim and transferred it to the United States District Court for the Northern District of Illinois, Eastern Division, for the convenience of the parties.

The original cross-claim consisted of two counts: in count I, Marshall claimed that Redstart breached its covenant in the Purchase Agreement to stop conducting business under its former corporate name, "J.D. Marshall International, Inc.," and in count II, Marshall claimed that Redstart, Ewing, and Mathur violated RICO. The basis of the RICO claims rests on the breakdown of the relationship between Redstart and Marshall regarding the payment of Redstart's liabilities. In mid–1984, Redstart apparently learned that Marshall was failing to satisfy certain of the liabilities and obligations Marshall had assumed and that Marshall had converted certain letters of credit belonging to Redstart. After representatives from Redstart and Marshall unsuccessfully attempted to resolve these differences, Redstart apparently resorted to self-help measures to recover

what it thought it was due—approximately $300,000.

Marshall's proposed second amended complaint alleges that the defendants committed four separate acts of fraudulent documentation and wire transfer whereby Redstart and its officers deliberately sought to defraud Marshall of the proceeds from its sale of goods to various customers. Regarding these rather complex international exchanges, suffice it to say that Redstart allegedly accomplished the fraudulent transactions enumerated in the complaint largely by taking advantage of the uncertainty among banks, customers and suppliers concerning the use of the name "J.D. Marshall International, Inc." For instance, Marshall charges that Redstart maintained an account at the First National Bank of Chicago under the name "J.D. Marshall International, Inc." even after the February 1984 sale. Thus, when customers wired payment to the bank that purportedly should have been received by Marshall, Redstart and its officers allegedly caused such payment to be transferred to the "J.D. Marshall International, Inc." account under their control. These fraudulent practices constitute the predicate acts for Marshall's RICO claims.

On December 20, 1984, Marshall filed a demand for arbitration before the American Arbitration Association in Chicago pursuant to the Purchase Agreement, which provided that either party could elect to arbitrate disputes arising from the contract. On February 24, 1987, the district court stayed its proceedings because of the pending arbitration between Marshall and Redstart. *J.D. Marshall International, Inc. v. Redstart, Inc.*, 656 F.Supp. 830 (N.D.Ill.1987). Apparently, however, the arbitration already had been concluded, with offsetting awards resulting in a net recovery by Marshall of $38,740.36. Redstart, Ewing, and Mathur then moved to dismiss Marshall's action arguing that (1) the *res judicata* effects of the arbitra-

tion award precluded Marshall's RICO claim, and (2) Marshall failed to plead a RICO claim properly.

Before the district court could rule on that motion, Marshall filed a motion for leave to file a first amended complaint. In its first amended complaint, Marshall restated its RICO count under § 1962(c), added two more RICO counts under §§ 1962(a) and (d), and named three more defendants, Inchcape PLC, Inchcape, Inc., and MITCO. On May 24, 1988, the district court granted Marshall leave to file its first amended complaint and evaluated that complaint in light of the issues raised in Redstart's motion to dismiss. *J.D. Marshall International, Inc. v. Redstart, Inc.*, 1988 WL 56287 (N.D.Ill.1988). The district court rejected Redstart's *res judicata* argument,[1] and proceeded to dismiss counts I and II of Marshall's first amended complaint for failure to allege RICO enterprises sufficiently. Counts III and IV of Marshall's first amended complaint, a § 1962(a) federal claim, and the contract claim, survived.

■ Defendants then moved to dismiss the remaining RICO claim on the basis that, among other things, the claim did not adequately allege a pattern of racketeering. Inchcape PLC also moved to dismiss for lack of personal jurisdiction. On December 29, 1989, the district court granted Defendants' motion to dismiss, holding that Marshall failed to allege sufficiently a pattern of racketeering activity; that Inchcape PLC was not subject to personal jurisdiction in this case; that Marshall failed to allege sufficiently a mail fraud violation regarding the Utica Tool account; and that Marshall failed to allege sufficiently a RICO violation by either Inchcape PLC or Inchcape, Inc. *J.D. Marshall International, Inc. v. Redstart, Inc.*, 1989 WL 165070 (N.D.Ill.1989). Having dismissed the remaining RICO allegations of Count III and the pendent contract claims of Count IV,[2]

---

**1.** In its May 24, 1988 order, the district court found that Marshall did not "have a full and fair opportunity to present its RICO claim in arbitration since this court and most others were of the opinion that RICO claims were nonarbitrable."

**2.** In dismissing Count IV, the district court noted that Count IV is a pendent contract claim and that such claims ordinarily are dismissed when the federal claims are dismissed. *See United Mine Workers of America v. Gibbs*, 383

**819**

the district court dismissed the entire case and entered judgment for the defendants.

At a hearing on February 1, 1990, the district court denied Marshall's post-judgment motion for leave to file its second amended complaint, noting that Marshall's proposed second amended complaint did not cure the deficiencies that led to the dismissal of Marshall's first amended complaint. As the district court had stated repeatedly, even when it granted Marshall additional time to submit a proposed second amended complaint, Marshall simply could not satisfy the pattern requirements of a RICO count. Marshall appealed, challenging the February 1st denial of its motion for leave to file a second amended complaint.

## II.

Though Marshall raises several issues on appeal, the case really comes down to this: did the district court abuse its discretion when it denied Marshall leave to file a second amended complaint? The answer to this question, as revealed by Marshall's decision to abandon its challenge to the dismissal of its first amended complaint, is the heart of this dispute. What's more, at the heart of the answer lies the issue of whether Marshall has sufficiently pleaded or can sufficiently plead a RICO pattern. Therefore, we avoid Marshall's other concerns and proceed directly to the central issue.

Marshall argues that its proposed second amended complaint sufficiently alleged violations of 18 U.S.C. § 1962(a), (c), and (d), such that the district court's denial constituted an abuse of discretion. Marshall maintains that, because Fed.R.Civ.P. 15(a) declares that leave to amend the pleading "shall be freely given when justice so requires," the district court erred by refusing Marshall's motion. We disagree. We note at the outset that granting or denying a motion for leave to file an amended pleading is a matter purely within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). *See also*

*Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 391 (7th Cir.1989). Leave to amend the pleadings may be denied for "apparent or declared reasons" such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. Therefore, a district court's denial of a motion to amend pleadings under Fed.R. Civ.P. 15(a) will be overturned on appeal only if it is shown that the district court abused that discretion by refusing to grant the leave without any justifying reason. *Jones v. Psimos*, 882 F.2d 1277, 1285 (7th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). *See also Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir.1985).

In the present case, we find that the district court had sufficient reason to refuse to grant Marshall leave to file its proposed second amended complaint. As the district court properly held, Marshall's proposed second amended complaint failed to remedy the deficiencies that plagued Marshall's earlier attempts to state a RICO claim. In its December 29, 1989 Order, the district court declared that this litigation merely involves "a highly contentious aftermath of a single transaction. Perhaps [Marshall] could show that some defendant or defendants ... so overreached in seeking to vindicate its or their position that it amounted to fraud, but that is not the stuff of a pattern of racketeering activity." We agree. Marshall's allegations of the defendants' wrongdoing were appropriately resolved in arbitration pursuant to the contract between the parties. These allegations simply do not rise to the level of a RICO claim.

Though we resist any invitation to consider the merits of Marshall's claims, we briefly review the allegations of the proposed second amended complaint to demonstrate the district court's appropriate exercise of its broad discretion. Marshall's pro-

U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d    218 (1966).

posed second amended complaint contains four counts: three RICO claims based on alleged violations of 18 U.S.C. §§ 1962(a), (c), (d), and § 1964(c), and the one pendent contract claim. Section 1962,[3] entitled "Prohibited Activities," outlaws using income derived from a "pattern of racketeering activity" to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce; acquiring or maintaining any interest in an enterprise through a pattern of racketeering activity; conducting or participating in the conduct of an enterprise through a pattern of racketeering activity; and conspiring to violate any of these provisions. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 482–83, 105 S.Ct. 3275, 3277–78, 87 L.Ed.2d 346 (1985). As the above language suggests, a crucial element of a claim under section 1962 is the existence of "a pattern of racketeering activity." It is this single element that rings the death knell of the RICO counts in Marshall's proposed second amended complaint. As the district court held, Marshall cannot sufficiently plead a RICO pattern. Therefore, the district court appropriately determined that any further amendments to the pleadings would be futile.

▮ To satisfy RICO's pattern requirement, Marshall must demonstrate at least two racketeering predicates that are related and that amount to, or threaten the likelihood of, continued racketeering activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989). *See also Sedima,* 473 U.S. at 496 n. 14. Satisfying the pattern requirements—that there be continuity and relationship among the predicate acts—is not easy in practice. *See Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986). Marshall appears to satisfy the relationship element of the pattern requirement. "[R]elationship implies that the predicate acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct." *Id. See also H.J. Inc.,* 109 S.Ct. at 2899–2901, 2906 (relationship element satisfied where predi-

cate acts "are said to be related by a common purpose"); *Sutherland v. O'Malley,* 882 F.2d 1196, 1204 (7th Cir.1989) (relationship element satisfied where predicate acts "involved the same type of misconduct and occurred within a relatively short period of time (five months), and they were each related by a common purpose"). Marshall's allegations of mail and wire fraud by Redstart and the other defendants all involve the same type of misconduct—defrauding Marshall of its proceeds—all occur within a relatively short period of time—thirteen months—and are all related by a common purpose—the desire to recoup what Marshall purportedly owed.

▮ Marshall cannot, however, establish that these predicate acts have the continuity necessary to constitute a pattern of racketeering activity. To satisfy the continuity element, the plaintiff must show that the alleged predicate acts "themselves amount to, or that they otherwise constitute a threat of *continuing* racketeering activity." *H.J. Inc.,* 109 S.Ct. at 2901 (emphasis in original). *See also Sutherland,* 882 F.2d at 1204. The Supreme Court has not established any clear-cut test or specific formula for determining if the allegations evince the required continuity. Instead, the specific facts of each case must be examined to determine whether the predicate acts upon which the plaintiff relies establish the threat of continuing racketeering activity. *Sutherland,* 882 F.2d at 1204. In *Morgan,* we developed a multifactor test to guide our inquiry. Relevant factors include "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." 804 F.2d at 975. *See also Sutherland,* 882 F.2d at 1204; *Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271, 1277 (7th Cir.1989); *Brandt v. Schal Assocs., Inc.,* 854 F.2d 948, 952 (7th Cir.1988).

▮ Marshall claims that Defendants' schemes and artifices to defraud were accomplished through interstate telephone

3. All statutory references herein cited in this form refer to Title 18 of the United States Code.

conversations, wires, letters, and other remittances sent through the United States mails, beginning soon after the February 3, 1984 sale of assets and continuing for the following 13 months. With the admittedly imprecise standard that emerges from the *Morgan* factor analysis, we find, as did the district court, that Marshall's allegations are "not the stuff of a pattern of racketeering activity." Marshall's allegations simply do not paint the kind of continuing racketeering activity by Redstart that is necessary to establish a RICO pattern. Although there is no requirement that a RICO pattern must include multiple schemes and victims, the fact that Redstart's alleged violations constituted a single scheme—purportedly to recover its money from Marshall—involved a single victim—Marshall—and were predicated upon a single transaction—the Purchase Agreement—informs our judgment. *See H.J. Inc.*, 109 S.Ct. at 2901–02 (Calling the allegations of multiple schemes and victims "highly relevant" to the inquiry into the continuity of the defendant's activity, the Court admonished, "What a plaintiff or prosecutor must prove is continuity of racketeering activity, or its threat, *simpliciter*.... Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."). *See also Sutherland*, 882 F.2d at 1204–05 ("While a RICO pattern can be established, in some circumstances, by proof of a single scheme, it is not irrelevant, in analyzing the continuity requirement, that there is only one scheme."). The results of the arbitration, a net recovery by Marshall of $38,740.36, suggest that, when the relationship between the parties deteriorated, Defendants may have fraudulently endeavored to recoup their losses. Yet, when we consider the complex relationship contractually established between Marshall and Redstart, what emerges is a commercial dispute between two parties to a contract, not a pattern of racketeering activity.

The cases upon which Marshall relies are distinguishable. Marshall cites four cases,

United States v. Horack, 833 F.2d 1235 (7th Cir.1987), *Appley v. West*, 832 F.2d 1021 (7th Cir.1987), *Liquid Air Corporation v. Rogers*, 834 F.2d 1297 (7th Cir. 1987), *cert. denied*, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989), and *Illinois Department of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985), to support its contention that Redstart's single scheme to defraud Marshall does indeed demonstrate a pattern of racketeering activity. These cases indicate that no single formula is required for a RICO pattern: there may be one scheme or many schemes; there may be only a few acts of racketeering or there may be many. Yet the common thread in all these cases—a thread that simply cannot be found in Marshall's allegations—is the existence of a genuine threat of continued criminal activity. This admittedly subtle distinction persuades us to note again that the factually oriented test we apply today is necessarily less than precise. *See Morgan*, 804 F.2d at 977. As the Supreme Court stated in *H.J. Inc.*:

> The limits of the relationship and continuity concepts that combine to define a RICO pattern, and the precise methods by which relatedness and continuity or its threat may be proved, cannot be fixed in advance with such clarity that it will always be apparent whether in a particular case a "pattern of racketeering activity" exists.

109 S.Ct. at 2902.

The cases that have emerged since the above words were written have given flesh to the broad frame of the RICO statute. With their guidance, we find that Marshall's repeated efforts to repackage its allegations cannot transform this contract fraud suit into a proper civil RICO suit. As the district court appropriately declared, "Adding more warts to the hog still does not make it a dragon." If granted, Marshall's motion for leave to file its second amended complaint merely would have given Marshall another futile opportunity to allege a pattern of racketeering activity. The district court's refusal to do that was not an abuse of discretion.[4]

---

4. Because we find that the district court did not

abuse its discretion in denying Marshall leave to

### III.

For the foregoing reasons, we find that the district court's decision to deny Marshall leave to file its second amended complaint must be

AFFIRMED.

file its proposed second amended complaint, we need not consider Marshall's other claims, specifically, its assertion that its proposed second amended complaint states sufficient facts to establish personal jurisdiction over one of the defendants, Inchcape PLC. Such jurisdictional claims become relevant only if the district court improperly denied leave to file.