952 F.2d 1398
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Thomas R. GARMAN, Plaintiff/Appellant,
v.
Carl ZULKE, et al., Defendants/Appellees.
 No. 90-3851.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 7, 1991.*
Decided Jan. 13, 1992.
Rehearing and Rehearing En Banc
Denied April 3, 1992.
 
 Before POSNER, COFFEY and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Thomas Garman appeals the district court's dismissal of his RICO claim (18 U.S.C. §§ 1961-1964). The court adopted the magistrate judge's Report and Recommendation, granting the defendants' motions to dismiss under Fed.R.Civ.P. 12(b)(6) and finding Garman's motions to compel discovery moot. For the reasons discussed below, we affirm.
 
 BACKGROUND
 
 2
 Thomas Garman, the owner of Garman Roofing Company, executed several notes with the State Bank of Freeport ("State Bank") between 1977 and 1984. In March of 1984 the State Bank notified Garman that the balance on his consolidated notes was $107,774.28, and he demanded a full accounting of his principal payments over the last several years. Garman was apparently having trouble making payments,[1] and so the State Bank then sent letters to Garman Roofing's customers and a tenant of Garman's, asking them to make payments directly to the Bank, as the debt was secured by Garman Roofing's accounts receivable.
 
 
 3
 Bank officers then met with Garman's son, Dan, after discovering that he had deposited a check from a Garman Roofing customer into his personal account. The State Bank's attorney threatened Dan with criminal prosecution if he did not turn the check over to the Bank. That same day the State Bank obtained a temporary restraining order, freezing Garman's accounts at another bank, Union Loan and Savings.
 
 
 4
 In December of 1984, Garman filed for Chapter 11 bankruptcy. State Bank tried to convert this into a Chapter 7 bankruptcy, hoping for a more complete satisfaction of the debt, but failed.
 
 
 5
 In his amended complaint Garman charges a number of defendants[2] with racketeering under 18 U.S.C. §§ 1961-1964. Garman alleges several predicate offenses as the basis for his RICO claims.[3] First, he accuses the State Bank and its attorney, David Shair, of bankruptcy fraud[4] and mail fraud resulting from allegations made while trying to convert the bankruptcy into a Chapter 7. Second, he charges the Schmelzle, Kroeger law firm and certain State Bank employees with extortion for threatening to prosecute Dan Garman if he did not hand over the check deposited in his personal account. Third, he alleges that bank officers committed bankruptcy fraud in offering to settle a claim with Dan Garman if he would allow the Garman Roofing bankruptcy to be converted into a Chapter 7. Fourth, he charges bankruptcy fraud for the State Bank's bringing an involuntary bankruptcy action against Dan Garman. Fifth, he accuses the Union Loan & Savings with bankruptcy fraud for giving Garman's private financial records to the State Bank's law firm. Sixth, he claims that the statements made by members of the Schmelzle, Kroeger firm in obtaining the temporary restraining order amounted to either bankruptcy or common law fraud. Finally, Garman alleges that the State Bank's mailing of letters to Garman Roofing customers constituted mail fraud.
 
 
 6
 The magistrate judge found Garman had not stated a claim upon which relief could be granted because he had not sufficiently alleged a "pattern" of racketeering activity, as required by 18 U.S.C. § 1962.
 
 ANALYSIS
 
 7
 We review the dismissal of a claim under Fed.R.Civ.P. 12(b)(6) de novo, assuming all well-pleaded allegations are true and drawing all reasonable inferences in favor of the plaintiff. Bethlehem Steel Corp. v. Bush, 918 F.2d 1323 (7th Cir.1990). The question is whether Garman could have proven any set of facts, consistent with his complaint, that would entitle him to relief. Zinser v. Rose, 868 F.2d 938 (7th Cir.1989).
 
 A. Pattern of Racketeering Activity
 
 8
 Garman seeks relief for the alleged racketeering activity of the defendants under 18 U.S.C. § 1964, claiming that they drove him out of business.[5] Section 1964, in turn, makes relief available to "[a]ny person injured in his business or property by reason of a violation of section 1962." To prove a violation of § 1962, a plaintiff must show the defendants engaged in "a pattern of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 483, 105 S.Ct. 3275, 3278 (1985); J.D. Marshall International, Inc. v. Redstart, Inc., 935 F.2d 815, 820 (7th Cir.1991). A "pattern" under RICO consists of at least two predicate offenses that "are related and that amount to, or threaten the likelihood of, continued racketeering activity." J.D. Marshall, 935 F.2d at 820 (citing H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893 (1989)). Thus, it is often said that predicate offenses under RICO form a pattern only when they have both "continuity" and a "relationship." Sedima, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.
 
 
 9
 In implementing these principles, this court examines the specific facts of each case to see if the alleged predicate acts form a pattern of racketeering activity. Sutherland v. O'Malley, 882 F.2d 1196, 1204 (7th Cir.1989). We have often looked to the factors outlined in Morgan v. Bank of Waukegan, 804 F.2d 970, 975 (7th Cir.1986) in deciding whether acts possess "continuity and relationship."[6] For predicate offenses to demonstrate continuity, "there must be some indication of a 'threat of continuing activity' by the defendants, not just one instance of fraud with a single victim."[7] Lipin Enterprises, Inc. v. Lee, 803 F.2d at 324 (quoting S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969) (emphasis added)). Past decisions have made it clear that when a case involves only one transaction resulting in one injury, no matter how great, the continuity element is not satisfied and there is no pattern of racketeering activity. See J.D. Marshall, 935 F.2d at 821 (no pattern where predicate acts all related to recovering money due under a purchase agreement); Triad Associates, Inc. v. Chicago Housing Authority, 892 F.2d 583, 595 (7th Cir.1989) (no pattern where sole injury was failure to retain CHA contract); Jones v. Lampe, 845 F.2d 755, 759 (7th Cir.1988) (no pattern where alleged predicate acts all revolved around a single loan transaction); Medical Emergency Service Associates v. Foulke, 844 F.2d 391, 398 (7th Cir.1988) (no pattern where alleged acts of mail fraud all related to defendants' attempt to replace plaintiffs as emergency health care providers at hospital); Marks v. Pannell Kerr Forster, 811 F.2d 1108, 1112 (7th Cir.1987) (no pattern where acts were part of a "one-shot" effort to inflict a single injury); Elliott v. Chicago Motor Club Insurance, 809 F.2d 347, 349-50 (7th Cir.1986) (no pattern where all acts of mail fraud related to settlement of single insurance claim); Lipin, 803 F.2d at 324 (no pattern where all acts involved one transaction and one victim).
 
 
 10
 This is not to say that a pattern can never exist when there is only one victim or one transaction. For example, an ongoing scheme to defraud a supplier on a series of shipments under one contract could qualify as a racketeering pattern. In such a case there would be multiple harms, likely to be repeated in the future. See Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1305 (7th Cir.) ("repeated infliction of economic injury upon a single victim of a single scheme is sufficient to establish a pattern of racketeering"), cert. denied sub nom. Rogers v. Liquid Air Corp., 492 U.S. 917, 109 S.Ct. 3241 (1987). In this case, however, the alleged bankruptcy fraud, mail fraud, and extortion all relate to a single transaction--the State Bank's collection of Garman's debt, and a single harm--Garman Roofing's going out of business.[8] The fact that this was a lengthy endeavor and generated many documents and allegedly fraudulent acts does not demonstrate the existence or threat of continued criminal activity, as the statute requires. H.J., 492 U.S. 229, 109 S.Ct. 2893 (noting that the pattern element is intended to focus RICO on cases involving the threat of continued criminal activity); Lipin, 804 F.2d at 976-77 (acts concerning one transaction, even though complex, do not form a pattern for RICO purposes); Morgan, 804 F.2d at 976. As the cases cited demonstrate, acts relating to a single transaction that cause a single harm do not constitute a pattern of racketeering activity, and so Garman's claim was properly dismissed.
 
 B. Discovery
 
 11
 Garman asserts that the district court abused its discretion in refusing to allow him to proceed with discovery.[9] The record, however, reveals only that the magistrate judge delayed ruling on Garman's requests for depositions until he could rule on the defendants' motions to dismiss. Appellant Appendix at 98-105. Because discovery is a means to sharpen the issues in a case for trial, and not a tool for gathering information to support a complaint, ( Beck v. Cantor, Fitzgerald & Co., Inc., 621 F.Supp. 1547, 1552-53 (N.D.Ill.1985)), we find that it was not an abuse of discretion to delay discovery. Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 744 (7th Cir.1985).
 
 
 12
 C. Objection to the Report and Recommendation
 
 
 13
 Garman claims that the district court erred in not considering his objection to the magistrate judge's Report and Recommendation before adopting it. Garman cites no authority holding that the judge was compelled to consider the objection, and the judge's commentary on the minute order form reveals that he did consider the objection, as he refers to it directly. Appellant Appendix at 145.
 
 D. Conspiracy
 
 14
 Finally, Garman asserts that he has alleged sufficient facts to support an inference of conspiracy. Apparently he is referring to 18 U.S.C. § 1962(d), which makes it illegal to conspire to violate § 1962(a), (b), or (c). A defendant becomes part of a conspiracy to violate RICO by entering an agreement with knowledge that the goal of the conspiracy is to "conduct or participate in the affairs of an enterprise through a pattern of racketeering activity." 18 U.S.C. § 1962(c); United States v. Glecier, 923 F.2d 496, 500 (7th Cir.1991). Assuming, arguendo, that Garman could prove an agreement between any two defendants, any conspiracy in this case would have been to commit a single harm, not to engage in a pattern of racketeering. Therefore, Garman has not adequately alleged a conspiracy, and his claim was properly dismissed.
 
 CONCLUSION
 
 15
 The decision of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 At a meeting with State Bank personnel, Garman explained that he was slow in making payments on the loan because his customers were "Chicago Jews," meaning that he would be paid, but slowly. State Bank officer Powell took offense at this remark and demanded payment by November 1, 1984 (less than two weeks later). Garman replied that he would have to file Chapter 11 bankruptcy to fulfill his contracts, to which Powell stated, "It will do you no good at all to file Chapter 11 and if you do put the company into Chapter 11, I will get you if I have to follow you to the ends of the earth." Brief of Defendants-Appellees, at 3
 
 
 [2]
 The defendants are: (1) The State Bank of Freeport and certain officers and employees, (2) Union Loan and Savings, (3) Schmelzle, Kroeger, Burt, Eckert, McClanathan, the State Bank's law firm prior to Garman's bankruptcy, and (4) Ritz, Shair & Anderson, the State Bank's law firm during the bankruptcy, and David Shair
 
 
 [3]
 18 U.S.C. § 1961(5) requires at least two acts of racketeering activity to establish a pattern
 
 
 [4]
 The magistrate judge noted the issue of whether the type of bankruptcy fraud alleged here actually qualifies as a predicate offense under 18 U.S.C. § 1961(1). Report and Recommendation at 10 n. 16. As Garman has alleged at least two acts of mail fraud and wire fraud, which are specifically noted in § 1961(1), we need not decide the issue here
 
 
 [5]
 Specifically, Garman contends that the defendants: (1) made fraudulent statements to Garman's suppliers, causing them to stop dealing with him, (2) used extortion to obtain information regarding Garman's accounts receivable and then used this information to harass his customers, (3) used fraudulent statements to obtain a temporary restraining order, severely harming Garman's business, and (4) obtained Garman's bank records by violating his privacy rights and used the information in these records so as to harm his business
 
 
 [6]
 The Morgan factors are:
 
 
 [1]
 The number and variety of predicate acts and the length of time over which the acts are committed
 
 
 [2]
 The number of victims
 
 
 [3]
 The presence of separate schemes
 
 
 [4]
 The occurrence of distinct injuries
 804 F.2d at 975.
 
 
 [7]
 Congress intended a natural and commonsense approach to RICO's pattern element, as the statute is concerned with long-term criminal conduct. H.J., 492 U.S. at ----, 109 S.Ct. at 2899-2902; see also Elliot, 809 F.2d at 350 (fact that there were five victims in car crash did not make insurance company's failure to settle claim a pattern of racketeering activity)
 
 
 [8]
 Though Garman alleges that there were multiple injuries and victims in his Affidavit in Support of Motion for Leave to Amend Complaint, (Appellant Appendix at 141), these were all collateral consequences of his going out of business, and therefore are not distinct enough to support a finding that there was a pattern of racketeering. Such harms simply do not indicate a genuine threat of continued criminal activity, and so cannot be used to demonstrate a RICO pattern. See H.J., 492 U.S. at ----, 109 S.Ct. at 2901-02 ("What a plaintiff or prosecutor must prove is continuity of racketeering activity or its threat, simpliciter.... Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.")
 
 
 [9]
 In his reply brief Garman also claims that Judge Roskowski and attorneys for State Bank committed fraud by not disclosing the Judge's possible conflict of interest earlier. The defendants have moved to strike the portion of the reply brief containing these claims, arguing that they were not raised in Garman's original brief and therefore are not properly before the court. We agree. Circuit Rule 28(f) states, "A reply brief shall be limited to matter in reply." The defendants did not address Judge Roskowski's alleged conflict of interest in their brief, and therefore Garman's assertions on this point are not properly before this court