**Evelyn GROTH, Plaintiff,**

v.

**ORKIN EXTERMINATING CO., INC., a foreign corporation licensed to do business in Illinois, Defendant.**

**No. 94–3112.**

United States District Court, C.D. Illinois, Springfield Division.

Dec. 15, 1995.

Patricia L. Hayes, Springfield, IL, for plaintiff.

Fred C. Prillaman and Patrick D. Shaw, Springfield, IL, for defendant.

*OPINION*

RICHARD MILLS, District Judge:

Plaintiff's Motion for Leave to File Second Amended Complaint.

Motion denied.

## I. BACKGROUND

This is a dispute between Orkin Exterminating Company, Inc. (Orkin) and a homeowner (Groth). Orkin supplied Groth with termite protection service, beginning in 1989. In 1994, Groth filed this lawsuit after Orkin refused to repair termite damage to her house. Groth alleged that Orkin had breach-

ed its contract with her to repair any termite damage that occurred after they entered the contract.

Groth originally filed suit in Illinois state court on February 16, 1994. On April 29, 1994, Orkin removed the case to this Court and moved to dismiss the Complaint. After receiving an extension of time in which to respond to that motion, Groth amended her Complaint. Orkin answered on July 19, 1994.

U.S. Magistrate Judge Charles H. Evans entered the first scheduling order on November 9, 1994. That scheduling order provided, inter alia, that no motions to join parties or to amend the pleadings were to be filed. The scheduling order also set the case for trial in September 1995.

On February 24, 1995, the parties agreed to extend the scheduling order. In their motion, the parties asked for additional time in which to identify expert witnesses. Groth's lawyer, Attorney Patricia L. Hayes, wanted an extension because Attorney Daniel J. Schumacher became associated with Groth's counsel on February 6, 1995, was assigned to the case two days later, and had insufficient time to comply with the Court's March 5, 1995 deadline for identifying expert witnesses. Magistrate Judge Evans amended the scheduling order to allow additional time in which to identify experts and moved the case to the October 1995 trailing trial calendar.

On June 28, 1995, Groth filed a motion to extend the scheduling order. Groth's attorney stated that an extension was needed because her associate, Mr. Schumacher, who was working on the case, left the firm and because she had extensive medical problems that prevented her from working on the case. Magistrate Judge Evans allowed the motion and amended the scheduling order. The second amended scheduling order provided that discovery was to end by October 10, 1995, dispositive motions were to be filed no later than October 24, 1995, and the case was set for trial in January 1996.

On October 12, 1995, Groth again filed a motion to extend the scheduling order. In her motion, Ms. Hayes, Groth's attorney, re-cited her medical problems and listed numerous other proceedings and depositions in which she was involved. Magistrate Judge Evans denied the motion.

On October 24, 1995, Orkin moved for summary judgment. On November 8, 1995, Groth filed a motion for leave to amend the Complaint. On November 9, 1995, Groth moved for an extension of time in which to file her response to Orkin's Motion for Summary Judgment. Groth's attorney stated that she is "a sole practitioner and has been unable to research and respond to Defendant's Motion for summary judgment ..." because she had been involved in numerous other matters during the preceding weeks. Magistrate Judge Evans allowed the motion.

On November 8, 1995, one day before filing the motion for additional time to respond to Orkin's Motion for Summary Judgment, Groth filed a Motion for Leave to File Second Amended Complaint (Motion for Leave to Amend). Groth seeks to amend her Complaint to include a claim of statutory consumer fraud, pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Ann.Stat. ch. 815, paras. 505/1–505/12 (Smith–Hurd 1993 & Supp.1995). Groth claims that newly discovered evidence supports such a claim. Groth states:

> During the course of discovery, Plaintiff has learned of the following facts that support a cause of action for statutory consumer fraud:
>
> a. Defendant's agent and employee, Mike Truitt, knowingly misrepresented to Plaintiff that her home would be covered by Orkin's "Total Repair Guarantee;"
>
> b. Plaintiff was induced by these representations to purchase Defendant's services;
>
> c. The written guarantees in the agreement materially conflict with the verbal guarantees given by Defendant and its agent/employee, Mike Truitt.
>
> d. Plaintiff detrimentally relied on these representations and suffered extensive damages;
>
> e. Defendant has failed to fulfill its duties under the "Total Repair Guarantee"

and is claiming Plaintiff only purchased a "limite [sic] Guarantee".

On November 20, 1995, Orkin vigorously responded to Groth's Motion for Leave to Amend. Finally, on November 27, 1995, Groth filed her response to Orkin's Motion for Summary Judgment.

On November 21, 1995 the Court ordered Groth to supplement her motion for leave to file with a proffer supporting her claim of newly discovered evidence. The Court ordered Groth to file "within 7 days ... copies of the discovery that allowed her to learn of the five specific facts listed in her motion. Her proffer shall contain the date when she received the discovery."

■ On November 30, Groth submitted a document entitled "Proffer in support of Motion to Amend." This two and a half page document was accompanied by no exhibits, despite the Court's direction that Groth provide "copies of the discovery that allowed her to learn of the five specific facts listed in her motion."[1]

Because the first proffer did not comply with the Court's November 21, 1995 order, the Court again ordered Groth to proffer firm evidence in support of her claim of newly discovered evidence. On December 11, 1995, Groth submitted a new proffer. The new proffer contains Affidavits from Groth's son, Ed Arendt, a former Orkin employee, and Leo Lang, an Orkin customer; copies of deposition transcripts for Groth herself and John Kendall, an Orkin employ-ee; Orkin's initial disclosures; Orkin's Response to Groth's First Set of Interrogatories; and other documents pertaining to Leo Lang.

## II.  AMENDMENTS TO THE PLEADINGS

Rule 15 provides that, except for amendments that are a matter of right, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely granted when justice so requires." Fed. R.Civ.P. 15(a).

■ Despite the apparent liberality with which courts are directed to grant leave to amend, several recognized exceptions exist. Discussing amendments under Rule 15, the Supreme Court stated:

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court....

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). This Court may deny leave to amend for any of the listed reasons.[2] Generally, a denial of leave

---

**1.** In addition to its factual inadequacy, Plaintiff's first proffer contained the unwarranted assertion that Rule 15(b) supported her Motion for Leave to Amend. Fed.R.Civ.P. 15(b) provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgement; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party

fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits....

By its terms, Rule 15(b) does not apply to the present situation. Plaintiff's assertion that her motion was justified under Rule 15(b) was not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; ...." Fed.R.Civ.P. 11(b)(1).

Perhaps recognizing that her earlier argument regarding Rule 15(b) was frivolous, Plaintiff makes no reference to that provision in her second proffer.

**2.** The decision to allow or deny motion for leave to amend the complaint is within the Court's discretion. *See Bohen v. City of East Chicago,* 799 F.2d 1180, 1184 (7th Cir.1986). The reason

to amend "will be overturned only if there was no reason justifying it." *Johnson v. Methodist Medical Center of Illinois,* 10 F.3d 1300, 1303 (7th Cir.1993) (citing *J.D. Marshall International Inc. v. Redstart, Inc.* 935 F.2d 815, 819 (7th Cir.1991)), *cert. denied,* —— U.S. ——, 114 S.Ct. 2102, 128 L.Ed.2d 664 (1994).

■ Denying leave to amend is particularly appropriate when a lawsuit is on the verge of final resolution. At such times, the court may deny leave to amend even if the plaintiff seeks to raise potentially meritorious claims. As the Seventh Circuit noted:

> It is true that the original theory of the Federal Rules of Civil Procedure was that the plaintiff ought to be permitted to fumble around searching for a meritorious claim within the elastic boundaries of a barebones complaint until the final pretrial conference. No judge or lawyer in this age of crowded dockets takes that completely seriously and in any event it is not a reversible error for the judge to insist that a separate claim be made subject to a separate suit, especially when the original claim was ripe for judgment.

*Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1430 (7th Cir.1993).

In *Sanders v. Venture Stores,* 56 F.3d 771 (7th Cir.1995), for instance, the Seventh Circuit affirmed a district court decision to deny a motion for leave to file an amended complaint that was filed after discovery had closed and the defendant had moved for summary judgment. The Seventh Circuit cited numerous cases in which it had "affirmed denials of a motion for leave to amend ... where a plaintiff sought leave to amend after the defendant filed a successful motion for summary judgment." *Id.* at 774–75. The plaintiffs in *Sanders* had offered no reason for their late motion for leave to amend. Therefore, the Seventh Circuit concluded that "if the court had granted leave to amend

at that juncture Venture would be compelled to incur additional discovery costs, and there would be undue delay and prejudice to the parties and to the court." *Id.* at 775; *see also Hindo v. University of Health Sciences,* 65 F.3d 608, 615 (7th Cir.1995) ("Seeking to amend one's complaint when it appears that the current one is a sure loser is not unusual; nor is the denial of leave to file that amended complaint.").

## III. ANALYSIS

■ Groth waited eighteen months after filing her original complaint before moving to amend her complaint on the unsupported ground that newly discovered evidence makes possible a new cause of action. Groth is not entitled to the relief she seeks. She must stick with the claims she pleaded in her Amended Complaint.

Although granting or denying leave to amend the pleading is within the Court's discretion, *Foman,* 371 U.S. at 182, 83 S.Ct. at 230, the Court finds that numerous reasons compel the decision to deny leave in this case.

■ *First,* Groth seeks to amend only after Orkin moved for summary judgment. That fact alone supports the Court's decision to deny the Motion for Leave to Amend. *See Sanders,* 56 F.3d at 774–75.

*Second,* Groth's motion violates the scheduling order. In the first scheduling order, entered on November 9, 1994, the Court stated: "No motions to join other parties and to amend the pleadings to be filed." The first and second amended scheduling orders contain identical language. Groth has been on notice for over a year that the time for amending the pleadings has passed.

■ *Third,* Groth has unduly delayed moving to amend. Groth has sought numerous extensions of time in this lawsuit. Only the last motion to extend (itself filed late [3])

---

for this grant of discretion is that "[a] trial judge is particularly well-situated to judge the worthiness of a plaintiff's motion to amend his complaint, having been involved in the progress of the case throughout its development and having viewed first-hand the parties' diligence or lack thereof." *Id.* at 1185.

**3.** Plaintiff moved on October 12, 1995 to extend the scheduling order. That motion sought to extend the deadline for discovery to be completed. The deadline for discovery had already passed by the time Plaintiff filed the motion. The motion was, therefore, improper. *See* CDIL–LR 1.18 ("Any party seeking an extension

mentioned discovery problems. In light of the extensive record in this case, Groth's attempt to blame her failure to timely amend on Orkin's uncooperativeness and elusive evidence lacks credibility.

■ *Fourth,* Groth's claim of newly discovered evidence is unwarranted. Newly discovered evidence that might justify an untimely motion to amend the pleadings is evidence that was not and could not reasonably have been discovered any earlier. *See Figgie International, Inc. v. Miller,* 966 F.2d 1178, 1180 (7th Cir.1992). Groth makes no serious attempt to explain why the alleged "new evidence" was not discovered sooner. The "newly discovered" facts central to Groth's new claim are all facts that Groth knew or should have known early in this lawsuit. Nothing in her proffer indicates that she would have been unable to plead these facts earlier. In fact, Groth's son states in his affidavit: "We did not learn that Orkin was contending that they were not responsible for repairs until 1994 after the lawsuit was filed." Second Proffer, Exhibit A. at para. 20. Furthermore, Groth knew what the Orkin sales representative told her when she originally contracted for termite service in 1989. As her son states, she knew in 1994 that Orkin had no intention of repairing termite damage, as she claims they had promised her in 1989. Thus, she could have either filed her lawsuit alleging a violation of the Consumer Fraud and Deceptive Business Practices Act or could have amended her complaint to include such a charge in 1994 or early 1995.

■ The Second Amended Complaint Groth offered with her Motion for Leave to Amend also undermines the claim of newly discovered evidence. In addition to repeating the factual allegations of the Amended Complaint, the Second Amended Complaint only recites the language of the Illinois Consumer Fraud and Deceptive Business Practices Act, states generalizations and matters of common knowledge about Orkin (such as that it advertises), details the conduct of Mike Truitt, Orkin's salesman, and finally claims that Truitt's promises of total repair

were never fulfilled. Nowhere does Count II of the Second Amended Complaint rely on facts that Groth could not have discovered long ago.

■ Groth's claim of newly discovered evidence borders on bad faith. *See Figgie International, Inc. v. Miller,* 966 F.2d at 1181. Groth has asserted that her motion for leave to amend is supported by newly discovered evidence. But the newly discovered evidence is simply a new spin on information that she clearly knew when she filed this lawsuit or shortly thereafter.

■ *Fifth,* granting leave to amend the Complaint will cause undue prejudice to Defendant and the Court. Defending a contract claim is vastly different than defending a statutory fraud claim. If the Court allowed Groth's motion for leave to amend, Orkin would be required to go through another round of discovery and dispositive motions. The Court would be forced to grant yet another set of extensions. *See Sanders,* 56 F.3d at 775. This case would go unresolved for months.

## IV. CONCLUSION

This lengthy examination of Plaintiff's Motion for Leave to File Second Amended Complaint reveals that it was nothing more than an attempt to make an end run around the well established procedures for orderly resolution of cases in the Federal courts. Orkin filed a motion for summary judgment. Instead of sticking to the issues she pleaded nearly two years ago, Plaintiff tried to change the playing field. Such a change is not warranted, would greatly prejudice Orkin, and would unduly burden this Court. Furthermore, by filing a motion as baseless and unwarranted as the instant one, Plaintiff has tread dangerously close to Rule 11 territory. *See* Fed.R.Civ.P. 11(b)(1)–(3) (discussing a party's obligations when filing "a pleading, written motion, or other paper").

*Ergo,* Plaintiff's Motion for Leave to File Second Amended Complaint is DENIED.

of time for any reason must file a motion for

such extension before the original deadline.").